| | | |
|---|---|---|
| RGB PLASTIC, LLC, d/b/a RESTAURANTWARE, | ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 08744 |
| v. | ) ) | Judge Edmond E. Chang |
| FIRST PACK, LLC, d/b/a PACK N WOOD, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

A service mark identifies the source of services, as distinct from a trademark, which identifies the source of goods. RGB Plastic LLC, which goes by the name Restaurantware, brought this action against First Pack, LLC (which uses the name Pack N Wood) in a dispute over Restaurantware's service mark, "Fashion for Food."[1] Restaurantware asserts five claims against First Pack: (1) service mark infringement under section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) false description under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2; and (5) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815

---

[1]The Court has subject-matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1338(a)-(b), and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

ILCS 505/2.[2] R. 1, Compl.[3] In response, First Pack counterclaimed against Restaurantware to cancel the service mark registration, alleging both that the mark is void and that Restaurantware committed fraud on the Patent and Trademark Office in obtaining the mark. R. 57, Am. Answer. First Pack now moves for summary judgment on its counterclaim, as well as against all of Restaurantware's claims and on First Pack's laches affirmative defense to those claims. R. 146, Def.'s Mot. Summ. J.; R. 164, Def.'s Br.[4] For its part, Restaurantware moves for partial summary judgment against First Pack's counterclaim. R. 180, Pl.'s Resp. Br. For the reasons discussed below, First Pack's motion is in large part denied on the cancellation counterclaim, although it is a close call. Restaurantware's

---

[2]Earlier in the case, Restaurantware voluntarily dismissed two other state-law claims. R. 21, Stipulation of Dismissal of Counts 4 and 6.

[3]Citations to the record filings are "R." followed by the docket number and, when necessary, a page or paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for First Pack's Statement of Facts) [R. 150 (unsealed)]; "PSOF" (for Restaurantware's Statement of Additional Facts) [R. 182 (unsealed)]; "Pl.'s Resp. DSOF" (for Restaurantware's Response to First Pack's Statement of Facts) [R. 182 (unsealed)]; and "Def.'s Resp. PSOF" (for First Pack's Response to Restaurantware's Statement of Additional Facts) [R. 206 (unsealed)]. To streamline the cross-motions for summary judgment briefing, the parties filed four, as opposed to six, briefs: R. 164, First Pack's Opening Brief (Def.'s Br.) (unsealed); R. 180, Restaurantware's Combined Opening and Response Brief (Pl.'s Resp. Br.) (unsealed); R. 209, First Pack's Combined Response and Reply Brief (Def.'s Reply Br.) (unsealed); and R. 229, Restaurantware's Reply Brief (Pl.'s Reply Br.) (unsealed).

[4]In ruling on the parties' cross-motions for summary judgment, the Court does not rely on any confidential information contained in the parties' sealed briefs, Local Rule 56.1 statements, or evidence cited in the briefs and 56.1 statements. So all of the Opinion's record citations are to the parties' publicly-available (redacted) filings. Because there was no need to rely on the under-seal parts, the Court need not definitively decide whether to unseal those parts. (Only when the evidence is relied on for judicial decision-making does the very strong presumption of public access come into play.) The Court will note, however, that some of the confidentiality designations seem much too broad, even at the discovery stage.

corresponding cross-motion against the cancellation counterclaim is denied. First Pack's motion also is denied on the issues of prior use, infringement, and laches.

## I. Background

To decide cross motions for summary judgment, the facts are viewed in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when the Court evaluates Restaurantware's summary judgment motion, First Pack gets the benefit of reasonable inferences; conversely, when evaluating First Pack's motion, it is Restaurantware that gets the benefit of the doubt.

### A. Restaurantware: "Fashion for Food"

Restaurantware is an Illinois-based retailer that sells tableware, cutlery, and flatware with a focus on eco-friendly products. R. 150, DSOF ¶ 11; R. 182, PSOF ¶ 15; R. 172 at Exh. 5, Rinella Decl. ¶ 3. Restaurantware does not manufacture the products it sells. PSOF ¶ 8; R. 182-2, Exh. 37, Rinella Dep. 52:9-23. Most of Restaurantware's customers are food industry professionals, such as restaurants, restaurant-supply companies, and catering companies, which buy Restaurantware's products via the company's website and catalogs. Exh. 5, Rinella Decl. ¶ 3.

In February or March 2011, Restaurantware developed the phrase "Fashion for Food" (though not with that capitalization) to describe bamboo skewers that Restaurantware sold.[5] PSOF ¶ 1; R. 206, Def.'s Resp. PSOF ¶ 1; R. 172 at Exh. 10,

---

[5]Restaurantware asserts that it also used the "Fashion for Food" tagline to describe the skewers in a product list that it sent to vendors around February 28, 2011. PSOF ¶ 2. In answering an interrogatory asking for every use of the mark before 2012, however, Restaurantware stated that "[t]he Mark was also used in a product list sent to all

Restaurantware's Resp. to First Pack's First Set of Interr. ¶ 8. By July 2011, Restaurantware sold the bamboo skewers on its website, and the product description included the phrase, "These are truly fashion for food!" PSOF ¶ 3; Def.'s Resp. PSOF ¶ 3; Exh. 5, Rinella Decl. ¶ 5 and Exh. 2 thereto; Exh. 10 Restaurantware's Resp. to First Pack's First Set of Interr. ¶ 8. The product "Brand" listed for the skewers was "Restaurantware LLC." R. 172, Exh. 5, Rinella Decl. ¶ 5 and Exh. 2 thereto.

After the product description on the website, the next display of the mark was in August 2011, when the "Fashion for Food" tagline was on a Restaurantware sign at an Arizona trade show hosted by a company called European Imports. PSOF ¶ 4; Def.'s Resp. PSOF ¶ 4; Exh. 5, Rinella Decl. ¶ 7 and Exh. 4 thereto; R. 182-3, Exh. 38, Restaurantware 30(b)(6) Dep. 12:4-10. About 500 people attended the trade show. DSOF ¶ 16; R. 172 at Exh. 12, Restaurantware 30(b)(6) Dep. 12:13-17; R. 172 at Exh. 13, Pohanka Dep. 46:3-7. The Restaurantware sign was on an 8½ by 11-inch, letter-sized piece of paper, and contained the "Fashion for Food" tagline, Restaurantware's logo and contact information, including its website address, and a picture of dessert tureens. DSOF ¶ 16; R. 172, Exh. 5, Rinella Decl., Exh. 4 thereto.

Next, in 2012, Restaurantware added its "Fashion for Food" tagline to its founders' business cards. DSOF ¶ 17; R. 182, Pl.'s Resp. DSOF ¶ 17. Like the trade show sign, the business card displayed the "Fashion for Food" tagline, along with

---

Restaurantware vendors and customers on or about *September 9*, 2011 and sold through the Restaurantware website." R. 172 at Exh. 10, Restaurantware's Resp. to First Pack's First Set of Interr. ¶ 8 (emphasis added). There is no mention of using the mark specifically in a product list sent to vendors in *February* 2011. *Id.*

Restaurantware's logo and contact information, including its website address. PSOF ¶ 4; R. 182-15, Exh. 50; Exh. 38, Restaurantware 30(b)(6) Dep. 53:16-24.

Restaurantware filed a service mark application for "Fashion for Food" on February 26, 2013. Exh. 5, Rinella Decl. ¶ 14 and Exh. 11 thereto. The PTO uses defined "classes" to categorize the different types of marks, and Restaurantware specifically sought to register its tagline as an "International Class 035" mark to identify its services. Restaurantware described the services as:

> *Marketing services*, namely, promoting or advertising the cutlery, tableware and flatware of others; *Marketing services* for the cutlery, tableware and flatware of others; *On-line retail store services* featuring a wide variety of cutlery, tableware and flatware of others; *Promoting* the cutlery, tableware and flatware of others; *Providing a searchable website* featuring the cutlery, tableware and flatware of other vendors; *Retail store services* featuring a wide variety of cutlery, tableware and flatware of others; *The bringing together, for the benefit of others*, of a variety of cutlery, tableware and flatware, enabling customers to conveniently view and purchase those goods.

*Id.* (emphases added). Restaurantware stated in its application that it first used the mark in commerce "at least as early as 02/28/2011." Exh. 5, Rinella Decl. at Exh. 11. Restaurantware submitted its business card to show use of "Fashion for Food" in commerce in connection with its International Class 035 services. DSOF ¶ 21; Exh. 5, Rinella Decl. ¶ 16 and Exh. 11 thereto at RGB.576. But the PTO rejected the business card as a valid specimen because it "ma[de] no reference to retail or promotional services or services consisting of a searchable website." DSOF ¶ 21; Exh. 5, Rinella Decl. ¶ 18 and Exh. 12 thereto at RGB.565.

In response to the rejection, Restaurantware submitted a picture of packaging tape displaying its "Fashion for Food" tagline as a substitute example.

DSOF ¶ 22; Exh. 5, Rinella Decl. ¶ 19 and Exh. 13 thereto at RGB.560-563. The PTO also rejected this example, finding that it "depict[ed] the mark on packaging for products sold through the services," instead of "depicting the mark in relation to … services." DSOF ¶ 22; Exh. 5, Rinella Decl. ¶ 20 and Exh. 14 thereto at RGB.547.

In March 2014, Restaurantware took another shot, submitting excerpts from its Fall/Winter 2014 catalog as substitute examples. DSOF ¶ 23; Exh. 5, Rinella Decl. ¶ 21 and Exh. 15 thereto. The cover of the catalog featured the "Fashion for Food" tagline, Restaurantware's logo and website, and a picture of desserts. DSOF ¶ 23; Exh. 5, Rinella Decl. ¶ 21 and Exh. 15 thereto at RGB.544-45. Restaurantware represented to the PTO that it used the Fall/Winter 2014 catalog in commerce "at least as early as the filing date of the application"—February 26, 2013. DSOF ¶ 23; Exh. 5, Rinella Decl. ¶ 21 and Exh. 15 thereto at RGB.540. In fact, however, Restaurantware did not use the Fall/Winter 2014 catalog until October 2014. DSOF ¶ 26; Pl.'s Resp. DSOF ¶ 26; Exh. 12, Restaurantware 30(b)(6) Dep. 73:13-21; R. 172 at Exh. 19, Runde Dep. 57:11-59:18; R. 172 at Exh. 20, Runde Dep. Exh. 105; R. 172 at Exh. 21, Runde Dep. Exh. 106. The PTO approved Restaurantware's application based on the Fall/Winter 2014 catalog specimen, and as a result, issued a service mark (Registration Number 4,570,714) for "Fashion for Food" in July 2014. DSOF ¶ 23; Exh. 5, Rinella Decl. ¶ 22 and Exh. 17 thereto.

## B. First Pack: "Everyday Fashion for Food Packaging"

First Pack is part of a family-owned French company that sells eco-friendly food packaging products to food industry professionals. DSOF ¶¶ 5, 6; PSOF ¶ 15;

R. 172 at Exh. 3, Merran Decl. ¶¶ 1, 2. First Pack sells its products via its website, catalogs, trade shows, and independent sales representatives. DSOF ¶ 6; Exh. 3, Merran Decl. ¶ 2.

In February 2012, First Pack developed the tagline "Everyday Fashion for Food Packaging" and used it to market tableware products at a trade show. DSOF ¶¶ 7, 8; Pl.'s Resp. DSOF ¶ 8; Exh. 3, Merran Decl. ¶¶ 3, 5. First Pack also placed the tagline on the cover of its 2012 product catalog. Exh. 3, Merran Decl. ¶ 6 and Exh. C thereto. The cover of the catalog showed the tagline, the First Pack brand name and logo, and a picture of petite food skewers. *Id.* By June 2012, First Pack had also placed the tagline on its corporate letterhead and website. DSOF ¶ 9; Pl.'s Resp. DSOF ¶ 9; Exh. 3, Merran Decl. ¶ 7. First Pack has used its tagline on its catalogs, website, and other promotional materials ever since. DSOF ¶ 9; Pl.'s Resp. DSOF ¶ 9.

In August 2014, First Pack filed a trademark application to register "Everyday Fashion for Food." PSOF ¶ 30; R. 182-14, Exh. 49. The PTO refused to register the mark after Restaurantware filed a letter of protest based on its "Fashion for Food" service mark. PSOF ¶¶ 31, 32; Def.'s Resp. PSOF ¶¶ 31, 32; R. 182-6, Exh. 41, Merran Dep. 194:14-19; Exh. 49.

The parties dispute when Restaurantware first learned about First Pack's use of "Everyday Fashion for Food Packaging." *Compare* PSOF ¶ 34, *with* Def.'s Resp. PSOF ¶ 34. Restaurantware claims that it was in Fall 2014, when its founders' parents received a First Pack catalog bearing the tagline. PSOF ¶ 34; Exh.

38, Restaurantware 30(b)(6) Dep. 80:20-81:14; Exh. 10 Restaurantware's Resp. to First Pack's First Set of Interr. ¶ 10. Against this, First Pack contends that Restaurantware was on notice as of May 2012, when First Pack sent Restaurantware a letter with its tagline in the letterhead. PSOF ¶ 27; Pl.'s Resp. DSOF ¶ 13; Def.'s Resp. PSOF ¶ 34. Restaurantware's co-founder acknowledges that she received the letter, but she says that she did not notice the tagline at that time. PSOF ¶ 26; R. 182-4, Exh. 39, Bouchareb Dep. 181:12-16.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

### A. First Pack's Counterclaim for Cancellation

First Pack moves for summary judgment on its counterclaim, arguing that Restaurantware's "Fashion for Food" service mark must be cancelled. R. 164, Def.'s Br. at 9-13. First Pack asserts two grounds for cancelling the mark. To start, First Pack contends that the mark is void because Restaurantware did not use "Fashion for Food" in commerce for the applied-for services before registering the mark. *Id.* at 10-12. Second, First Pack contends that Restaurantware fraudulently obtained the registration when it represented that its third specimen—the Fall/Winter 2014 catalog—had been used in commerce since February 26, 2013, which was the mark's application filing date. *Id.* at 12-13.

Although it is a very close call (as detailed later), Restaurantware has just enough evidence to raise a genuine issue of fact on whether it continually used the mark in commerce to identify its *retail* services.[6] But Restaurantware has no evidence, even when the record is viewed in its favor, that it used the mark to identify any *marketing* or *promotional* services. And there is a genuine issue of fact

---

[6]Restaurantware listed the following "retail services" in its service mark application for "Fashion for Food": "On-line retail store services featuring a wide variety of cutlery, tableware and flatware of others; … Providing a searchable website featuring the cutlery, tableware and flatware of other vendors; Retail store services featuring a wide variety of cutlery, tableware and flatware of others; [and] The bringing together, for the benefit of others, of a variety of cutlery, tableware and flatware, enabling customers to conveniently view and purchase those goods." Exh. 5, Rinella Decl. ¶ 14 and Exh. 11 thereto.

on whether Restaurantware engaged in fraud in obtaining the mark. The bottom line is that First Pack's motion for summary judgment on its counterclaim is denied, except insofar as the mark purportedly identifies marketing or promotional services. On the flip side, Restaurantware's motion for summary judgment is also denied, because there is enough evidence, when viewed in First Pack's favor, that the mark was not used continuously in commerce and that Restaurantware did engage in fraud in obtaining the mark.

## 1. Restaurantware's Use of the Mark

Under § 45 of the Lanham Act, a service mark is any "word, name, symbol or device, or any combination thereof used by a person, or which a person has a bona fide intention to use in commerce … to identify and distinguish the services of one person … from the services of others and to indicate the source of the services … ." 15 U.S.C. § 1127; *see also In re Advert. & Mktg. Dev.*, 821 F.2d 614, 620 (Fed. Cir. 1987) ("It is not enough for the applicant to be a provider of services; the applicant also must have *used the mark to identify the named services* for which registration is sought." (emphasis added)). There must be a "'direct association' between the mark and the services named in the application … ." *In re Advert. & Mktg. Dev.*, 821 F.2d at 620; *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 906-07 (9th Cir. 1995). Put another way, the applicant must "use … the mark in a manner that would be perceived by potential purchasers as identifying

the applicant's services and indicating their source … ." *In Re Dsm Pharm., Inc.*, 87 U.S.P.Q.2d 1623, 2008 WL 2385957, at *1 (T.T.A.B. June 4, 2008).[7]

To obtain a service mark, the applicant must verify that its mark is "used in commerce." 15 U.S.C. §§ 1051(a)(3)(C) (requirements for trademark registration), 1053 (adopting trademark-registration requirements for service mark registration). Only "bona fide use of a mark in the ordinary course of trade" meets the use requirement, meaning the mark is "used or displayed in the sale or advertising of services and the services are rendered in commerce … ." 15 U.S.C. § 1127 (definition of "use in commerce"; definition for "services" in subparagraph (2)). This means that an applicant must make a "continuous effort" to use the mark or have a continuous intent to do so.[8] *Avakoff v. S. Pac. Co.*, 765 F.2d 1097, 1098 (Fed. Cir. 1985); *see also Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 2013 WL 6839815, at *13 (N.D. Ill. Dec. 27, 2013) ("token" use insufficient). Generally, use of the service mark on "'such things as business cards, stationary, circulars, brochures, invoices, direct mailing pieces, advertisements, store signs and almost every type of printed matter'" meet the use-in-commerce requirement. *Am. Eagle Outfitters, Inc.*, 2013

---

[7]The Seventh Circuit and courts in this district often cite Trademark Trial and Appeal Board decisions as persuasive authority, which makes sense given the Board's statutory role in deciding adversary proceedings arising from the PTO's decisions on trademark registration. *See, e.g.*, *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 813 (7th Cir. 2002); *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 440 (7th Cir. 1990); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 676 (7th Cir. 1982); *Slep-Tone Entm't Corp. v. Coyne*, 2015 WL 5821695, at *6 (N.D. Ill. Sept. 30, 2015); *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 583 (N.D. Ill. 2010), *aff'd*, 747 F.3d 929 (7th Cir. 2014).

[8]Restaurantware did not file its service mark application as an "intent-to-use" application. Indeed, when the PTO rejected the proposed in-use specimen in January 2014, the PTO gave Restaurantware the option to change the filing basis to an intent-to-use application, Exh. 5, Rinella Decl., Exh. 14 at 2, but Restaurantware did not do that.

WL 6839815, at *13 (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:83 (4th ed.)). "The registration of a mark that does not meet the use requirement is void … ." *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009); *Am. Eagle Outfitters, Inc.*, 2013 WL 6839815, at *12.

Restaurantware's service mark application for "Fashion for Food" sought to register its tagline for the following services:

> *Marketing services*, namely, promoting or advertising the cutlery, tableware and flatware of others; *Marketing services* for the cutlery, tableware and flatware of others; *On-line retail store services* featuring a wide variety of cutlery, tableware and flatware of others; *Promoting* the cutlery, tableware and flatware *of others*; *Providing a searchable website* featuring the cutlery, tableware and flatware of other vendors; *Retail store services* featuring a wide variety of cutlery, tableware and flatware of others; *The bringing together, for the benefit of others*, of a variety of cutlery, tableware and flatware, *enabling customers to conveniently view and purchase those goods.*

Exh. 5, Rinella Decl. ¶ 14 and Exh. 11 thereto (emphases added). The gist of this description of services is that "Fashion for Food" was, supposedly, used by Restaurantware to identify itself as providing both marketing services to cutlery, tableware, and flatware manufacturers, as well as retail services—namely, selling cutlery, tableware, and flatware—to consumers.

### a. Use of the Service Mark in Commerce

The first issue is whether Restaurantware ever used "Fashion for Food" in commerce before filing its service mark application. *See* 15 U.S.C. §§ 1051(a)(3)(C) (requirements for trademark registration), 1053 (adopting trademark-registration requirements for service mark registration). Before February 2013 (the date of the service mark application), Restaurantware used the phrase as part of a product

12

description for bamboo skewers; on an 8.5 x 11 inch sign displayed at a trade show; on a business card; and on packaging used to ship cutlery, tableware, and flatware. PSOF ¶¶ 2-4; Def.'s Resp. PSOF ¶¶ 2-4; Exh. 5, Rinella Decl. ¶¶ 5, 7, 9, 19 and Exhs. 2, 4, 13 at RGB.560-563 thereto; Exh. 50. Restaurantware also used the phrase on a Fall/Winter 2014 catalog, which it submitted to the PTO as part of its service mark application. DSOF ¶ 23; Exh. 5, Rinella Decl. ¶ 21 and Exh. 15 thereto. As discussed next, a reasonable trier of fact (viewing the evidence in Restaurantware's favor) could find that Restaurantware used "Fashion for Food" in commerce—at least in some, though not all, of the ways proposed by Restaurantware— to identify its retail services.

### i. Bamboo Skewers

Restaurantware used the phrase, "These are truly fashion for food!" to describe bamboo skewers it sold on its website and through product lists sent to vendors in 2011. PSOF ¶¶ 2, 3; Def.'s Resp. PSOF ¶¶ 2, 3; Exh. 5, Rinella Decl. ¶¶ 4, 5 and Exh. 2 thereto; Exh. 10 Restaurantware's Resp. to First Pack's First Set of Interr. ¶ 8. The product "Brand" listed for the skewers was "Restaurantware LLC." Exh. 5, Rinella Decl. ¶ 5 and Exh. 2 thereto. It looked like this:



This use of "fashion for food" to describe bamboo skewers does not qualify as use of the *service* mark in commerce. The problem is that merely incorporating "Fashion for Food" into a *product* description says nothing about any service that Restaurantware provides. Remember that a service mark must be used to identify *services*, not goods. *In re Advert. & Mktg. Dev., Inc.*, 821 F.2d at 619-21. For example, in *In re Restonic Corp.*, the Trademark Trial and Appeal Board held that the phrase "NICE TO GET HOME TO" to describe a mattress did not qualify as a service mark for "marketing and franchising services," reasoning that the mark "merely … advertise[d] [mattresses] manufactured and sold by applicant's franchisees … ." 189 U.S.P.Q. 248, 1975 WL 20927, at *1, 3 (T.T.A.B. Nov. 10, 1975); *see also In re Brown & Portillo Inc.*, 5 U.S.P.Q.2d 1381, 1987 WL 123868, at *1, 3 (T.T.A.B. Aug. 12, 1987) (holding that applicant failed to show a direct association between the applied-for mark—HEARTY BASKET—and restaurant *services* where the applicant placed the mark on a menu to identify an entrée available at the restaurant).

The same reasoning applies here. Restaurantware applied to use "Fashion for Food" as a *service* mark, specifically for its marketing and retailing services in connection with "the cutlery, tableware and flatware of others … ." Exh. 5, Rinella Decl. ¶ 14 and Exh. 11 thereto. Nowhere does the bamboo skewers product description advertise—let alone identify—these services. Put another way, the bamboo skewer product description does not purport to sell or advertise Restaurantware's marketing services to cutlery, tableware, and flatware manufacturers or its retail services to consumers; the product description is trying to sell the bamboo skewers. *See In Re Dsm Pharm., Inc.*, 87 U.S.P.Q.2d 1623, 2008 WL 2385957, at *1 (requiring "use of the mark in a manner that would be perceived by *potential purchasers* as identifying the applicant's services and indicating their source" (emphasis added)). Rather than identify any service, the phrase "These are truly fashion for food!" promotes the bamboo skewers. This is where an omission speaks volumes, because the product description does not say anything about Restaurantware performing services for "others." Even the "Brand" listed for the skewers is "Restaurantware LLC." Exh. 5, Rinella Decl. ¶ 5 and Exh. 2 thereto. In any event, even if another company were listed as the "Brand," still the product description would not alert anyone that the phrase was identifying a service.[9] The

---

[9]The bamboo product description—"This are truly fashion for food!"—does not even support use of "Fashion for Food" as a trademark (let alone a service mark). In *MicroStrategy Inc. v. Motorola Inc.*, the Fourth Circuit held that MircroStrategy's use of the term "Intelligence Everywhere" in the "midst of text" was insufficient to establish trademark usage. 245 F.3d 335, 341 (4th Cir. 2001). The court reasoned that "[u]se of a trademark to identify goods and services and distinguish them from those of others 'does not contemplate that the public will be required or expected to browse through a group of words, or scan an entire page in order to decide that a particular word, separated from its

bamboo skewer product description therefore fails to count as a use of the mark in commerce.

### ii. 8.5 by 11-inch Sign

Restaurantware used "Fashion for Food" on an 8.5 x 11-inch sign at an August 2011 European Imports trade show. The sign consisted of the "Fashion for Food" tagline, Restaurantware's logo and contact information (including its website address), and a picture of desserts. DSOF ¶ 16; Exh. 5, Rinella Decl. at Exh. 4 thereto. It looked like this:



Viewing the evidence in the light most favorable to Restaurantware, the sign meets the use-in-commerce requirement. Trade show attendees looking at the sign

---

context, may or may not be intended, or may or may not serve to identify the product.'" *Id.* (quoting *In re Morganroth*, 208 U.S.P.Q. 284, 1980 WL 30167, at *4 (T.T.A.B. 1980)). As in *Microstategy*, Restaurantware's failure to use "Fashion for Food" as a standalone tagline refutes any claim that Restaurantware used the mark to identify the bamboo skewers (let alone retail services to sell the skewers) and distinguish them from those of others.

could have associated "Fashion for Food" with Restaurantware's retail services.[10] To start, the sign directs potential purchasers[11] to Restaurantware's website, which is a key way that Restaurantware delivers the retail services that it provides. The sign also highlights three items: "Restaurantware.com," "Fashion for Food," and the dessert display photo. Considering these items together, a consumer could infer that "Fashion for Food" is a promotional tagline used to invite customers to use Restaurantware's searchable website and other online retail store services. *See* Exh. 5, Rinella Decl. ¶ 14 and Exh. 11 thereto (stating that Restaurantware's applied-for services included a searchable website and online retail store services). A consumer could even infer just from seeing "Fashion for Food" in conjunction with the dessert display photo—which featured a *variety of dessert cups*—that Restaurantware is in the business of "bringing together, for the benefit of others, … a *variety of cutlery, tableware and flatware* … ." Exh. 5, Rinella Decl. ¶ 14 and Exh. 11 thereto (emphasis added). To be sure, Restaurantware's sign is by no means a textbook example of drawing a "direct association" between a mark and retail services. But

---

[10]The Court notes that trade show attendees could also have associated "Fashion for Food" with Restaurantware's products. Indeed, the sign actually says, under the "Restaurantware.com" name, "Disposable Flatware." So in this sense, the sign appears to be advertising tableware sold by Restaurantware, which is not the same thing as identifying Restaurantware as a provider of marketing or retail services to others. But a mark can function both as a service mark and as a trademark. *See Am. Eagle Outfitters*, 2013 WL 6839815, at *13 (observing that "although Defendants could have registered their mark to use both as a trademark and a service mark, they chose not to"); 3 McCarthy on Trademarks and Unfair Competition § 19:84 (4th ed.) ("There is no doubt that a given symbol can be used in such a way that it functions as both a trademark for goods and a service mark for services … ."). So even though the sign arguably evidences use of "Fashion for Food" as a trademark, this does not foreclose the possibility that the sign also evidences "Fashion for Food" as a service mark.

[11]About 500 "potential purchasers" attended the trade show. DSOF ¶ 16; Exh. 12, Restaurantware 30(b)(6) Dep. 12:13-17; Exh. 13, Pohanka Dep. 46:3-7.

the association is just enough here that a jury could reasonably find the sign meets the use-in-commerce requirement, *see Application of Universal Oil Prods. Co.*, 476 F.2d 653, 655 (C.C.P.A. 1973) ("The minimum requirement is some direct association between the offer of services and the mark sought to be registered therefor."), and at the summary judgment stage, the evidence must be viewed in Restaurantware's favor.

The Court holds, however, that the sign does not qualify as use of "Fashion for Food" in commerce to identify Restaurantware's *marketing* services (as distinct from *retail* services). First, the sign offers no hint that Restaurantware is in the business of "[m]arketing services, namely, promoting or advertising the cutlery, tableware and flatware of others … ." Exh. 5, Rinella Decl. ¶ 14 and Exh. 11 thereto. This is important because "[i]t is not enough for the applicant to be a provider of services; the applicant also must have used the mark to identify the *named services* for which registration is sought." *In re Advert. & Mktg. Dev., Inc.*, 821 F.2d at 620 (emphasis added); *see also In Re Admark, Inc.*, 214 U.S.P.Q. (BNA) ¶ 302, 1982 WL 50441, at *2 (T.T.A.B. Apr. 1, 1982). In *In Re Admark, Inc.*, the Trial and Trademark Board refused to register "THE ROAD AUTHORITY" as a service mark for advertising services because the mark only identified Admark's retail store services. 1982 WL 50441, at *2-3. The Board reasoned that "the mark or slogan that is the focus of an advertising campaign for a client's goods or services cannot be said to function as a service mark for the licensor's-applicant's-advertising agency services." *Id.* at *2. The same reasoning applies here: "Fashion

for Food" does not function as a service mark for Restaurantware's marketing services, but rather is part of an advertising campaign to promote and sell manufacturers' products via Restaurantware's retail services.

Second, there is no evidence, and Restaurantware does not assert, that manufacturers even attended the trade show.[12] As noted, an applicant must "use[] or display[] [the mark] in the *sale or advertising of services* … ." 15 U.S.C. § 1127 (emphasis added). Without any manufacturers to even advertise to, a reasonable factfinder could not find that the sign evidences a "direct association" between "Fashion for Food" and marketing services. There simply is nothing on the sign or the context in which "Fashion for Food" was used that identifies and promotes Restaurantware's marketing services.

### iii. Business Card

Restaurantware's business card displayed the "Fashion for Food" tagline, along with the company's logo, contact information, and website address. PSOF ¶ 4; Exh. 50; Exh. 38, Restaurantware 30(b)(6) Dep. 53:16-24. Restaurantware's co-founder claimed that he gave business cards "to potential customers in order to help them find and use our website," and used the cards "[a]t the January 2013 Fancy

---

[12]Restaurantware points out that at this trade show, European Imports and its "reps" were "Restaurantware's 'customer[s]' for the marketing services that Restaurantware provides." R. 229, Pl.'s Reply Br. at 4. But European Imports *hosted* the trade show, and Restaurantware offers no evidence that European Imports was a customer for its marketing and retail services. Also, Restaurantware concedes that European Imports is "an industry *distributor* and a standalone division of Sysco." Pl.'s Resp. Br. at 4 (emphasis added); *see also* R. 182-7, Exh. 42, Pohanka Dep. 33:11-17. European Imports is not a *manufacturer* of the goods that Restaurantware sells, and Restaurantware does not offer evidence that European Imports would have any use for Restaurantware's marketing and retail services. In any event, still there is nothing on the sign associating "Fashion for Food" with Restaurantware as a source of marketing services.

Food trade show ....." R. 182-1, Exh. 36, Rinella Aff. ¶¶ 8-9. Here is an example (the image is as blurry as the one supplied by the parties):



Like the 8.5 x 11-inch sign, a potential customer looking at the business card could associate " 'ashion for Food" with Restaurantware's *retail* services (which is differe t from *marketing* services for manufacturers, as explained below).[13] Significantly, the business card directs customers to Restaurantware.com, which is both the name a d website for Restaurantware's retail services. The business card also displays "F shion for Food" under the "Restaurantware.com" heading. A potenti l customer could gather from the card that "Fashi n for Food" was a tagline used to identify and lure customers to Restaurantware's online tableware retail website. *Cf. In Re Ralph Mantia Inc.*, 54 U.S.P. .2d 1284, 2000 WL 423353, at *1-3 (T.T.A. 3. Feb. 25, 2000) (holding that a business card and stationery displaying the

---

[13] To be sure, it is also possible that potential purchasers ooking at the business card could associate "Fa hion for Food" with Restaurant are's prod cts. The business card says "Biodeg adable Ta leware" under the Restaurantware.com name (it is hard to see, but that is what it says in t e light lettering against the dark rectangular band; the trade show sign said "Disposable T bleware"). But, as mentioned above, *supra* ection III.A.1.ii at 17, n.10, a mark can function both as a service mark and as a trademark so long as the mark is a source i dicator for both the applied-for services and goods.

mark and the word "design" were acceptable specimens of use for applicant's mark in connection with commercial art design services after reasoning that "the word 'design' alone is sufficient to create in the minds of purchasers an association between the mark and applicant's commercial art services"). To be sure, the business card does not explicitly specify that Restaurantware is a "retail service provider" using those words, but of course "there is no language in [15 U.S.C. § 1127] or rules which require that specimens … spell out the type of services rendered." *In Re Sw. Petro-Chem, Inc.*, 183 U.S.P.Q. (BNA) ¶ 371, 1974 WL 19993, at *1 (T.T.A.B. June 25, 1974). A reasonable factfinder could conclude that because the business card uses "Fashion for Food" to promote and advertise Restaurantware's retail services, a reasonable factfinder could conclude that it meets the use-in-commerce requirement.

First Pack makes much of the fact that the PTO examiner rejected the business card as a valid specimen of use-in-commerce. Def.'s Br. at 11. But First Pack does not adequately explain how the PTO examiner's rejection would be admissible evidence. The admissibility problem arises because the PTO examiner's out-of-court statement is hearsay: First Pack offers the statement for the truth of the matter asserted, namely, that the business card does not show a use of "Fashion for Food" in connection with any of the applied-for services. It is true that perhaps the examiner's statement, which was contained in a PTO Office Action letter, could qualify for a hearsay exception. One possibility is the public-report exception set

forth in Federal Rule of Evidence 803(8).[14] But First Pack did not argue the exception, and just assumed the statement's admissibility. The other problem with offering the examiner's rejection into evidence is a foundation-type concern over the basis of the rejection: what exactly did the PTO examiner consider in arriving at the conclusion? If the examiner considered evidence that is not presented to the factfinder during the trial, or the examiner did *not* consider evidence that the factfinder *will* consider, then the probative value of the examiner is questionable. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220 (3d Cir. 2000) (expressing concern that "there is relevant evidence not considered by the [PTO] that informs the analysis"); *see also Marketing Displays, Inc. v. Traffix Devices, Inc.*, 200 F.3d 929, 934 (6th Cir. 1999); *Carter–Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970).[15] So the PTO examiner's rejection of

---

[14]FRE 803(8) is the public records exception to the hearsay rule. Courts are divided as to whether and when PTO documents qualify under FRE 803(8). *See, e.g.*, *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, 2014 WL 695549, at *13 (W.D. Pa. Feb. 24, 2014) *recons. denied*, 2014 WL 2608117 (W.D. Pa. June 11, 2014) (observing that Rule 803(8) only exempts from the hearsay rule reports by officials and holding as a result that discussion within PTO Reexamination Proceeding documents "of attorney positions and arguments … would certainly not qualify under the exception for public records"); *IA Labs CA, LLC v. Nintendo Co.*, 857 F.Supp.2d 550, 552 (D. Md. 2012) ("Although the Court need not decide the question of hearsay, the Court recognizes that documents created in the course of the reexamination proceedings may well fall within the exception to hearsay for public records."); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1330003, *3 (N.D. Cal. May 15, 2006) ("As Fresenius points out, Baxter does not cite a single case in support of its Motion where a court has excluded PTO documents as inadmissible hearsay. To the contrary, courts regularly consider such documents when construing claims for the purposes of infringement and validity analyses.").

[15]For its part, Restaurantware also relied on a PTO statement, and that reliance is questionable for the same reasons. Restaurantware highlights the PTO's findings that "'[First Pack's] mark is merely an addition to [Restaurantware's] mark,'" and that "'[t]he marks are similar in appearance and convey similar meanings.'" Pl.'s Resp. Br. at 12. Restaurantware also quotes a district court case (which in turn cites another district court case) for the proposition that "'[a]lthough determinations of the PTO are not conclusive on

the business card does not undermine Restaurantware's reliance on the card to show use-in-commerce for *retail* services.

Just looking at the business card, however, it is impossible to tell whether Restaurantware engaged in *marketing* services for manufacturers. And, just as the 8.5 x 11 inch sign was not directed or shown to manufacturers, there is no evidence that Restaurantware ever handed out its business cards to manufacturers. In fact, Restaurantware's co-founder claimed that he gave business cards "to potential customers in order to help them find and use [the] website." Exh. 36, Rinella Aff. ¶ 8. The website, however, is part of Restaurantware's *retail* services, not its *marketing* services. Thus, even viewing the evidence in the light most favorable to Restaurantware, the business card does not evidence a "direct association" between "Fashion for Food" and marketing services, and as a result, does not meet the use-in-commerce requirement for those services.

### iv. Packaging Materials

Restaurantware also used "Fashion for Food" on packaging materials used to ship tableware products to Restaurantware's customers. The packaging material looked like this:

---

the issue of likelihood of confusion, its decisions to refuse registrations are entitled to great weight.'" *Ty Inc. v. Softbelly's Inc.*, 2006 WL 5111124, at *12 (N.D. Ill. Apr. 7, 2006) (quoting *Sam's Wines & Liquors, Inc. v. Wal–Mart Stores, Inc.*, 1994 WL 529331, at *5 (N.D. Ill., Sept. 27, 1994). But it does not appear that the hearsay issue was presented to those courts. And if the citations for the proposition are traced back to their origin, the original case authority (a decision from the Second Circuit) actually endorsed relying the PTO's refusal to register as evidence of the infringer's *bad faith*, not only the underlying question of infringement itself. *W.E. Bassett Co. v Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970) (cited by *Syntex Labs., Inc. v. Nowich Pharm. Co.*, 437 F.2d 566, 569 (2d Cir. 1971) (cited by *Murphy Door Bed Co., Inc. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) (cited by *Sam's Wines*, 1994 WL 529331, at *5)))).



The packaging material is evidence of use-in-commerce for retail services for essentially the same reasons that the 8.5 x 11 sign and business card qualify as evidence on the same issue. The association between "Fashion for Food" and Resturantware.com on the packaging tape simultaneously promotes and directs consumers to Restaurantware's online retail services. Further, the packaging material also evidences Restaurantware using "Fashion for Food" *in the course of rendering its retail services. See In re Metriplex, Inc.*, 23 USPQ2d 1315, 1992 WL 169149, at *2 (T.T.A.B. May 5, 1992) (approving specimens as showing use of applicant's mark in connection with data transmission services because the specimens showed "the mark as it appears on a computer terminal *in the course of applicant's rendering of the service*," and noting that "purchasers and users of the service would recognize [applicant's mark], as it appears on the computer screen specimens, as a mark identifying the data transmission services which are accessed via the computer terminal" (emphasis added)). The Court notes again, however, that the packaging material does not evidence use of "Fashion for Food" as a source

identifier for *marketing* services (for the same reasons that the sign and business card do not).

First Pack contends that the packaging material does not meet the use-in-commerce requirement because the material only "'depict[s] the mark on packaging for products sold through the services.'"[16] Def.'s Br. at 11. To be sure, merely using a service mark on goods or in the sale or advertising of goods is not enough to meet the use-in-commerce requirement. *See, e.g.*, *In re Restonic*, 189 U.S.P.Q. 248, 1975 WL 20927, at *2 ("[S]pecimens filed in a service mark application must show the mark 'used or displayed in the sale or advertising of services' as distinguished from use on goods or in the sale or advertising of goods of the applicant."); *In Re Wte Corp.*, 87 U.S.P.Q.2d 1536, 2008 WL 2070609, at *6 (T.T.A.B. May 13, 2008) ("Applicant's return address on products that it already made and sold to the customer does not show a connection between the offer of contract processing of metals services and the mark."). But the rub here is that Restaurantware's use of "Fashion for Food" on its packaging does more than just identify the source of the goods in the shipment. It also draws an association between the mark and "Restaurantware.com," which is both the name and website address for Restaurantware's online retail services. Giving Restaurantware the benefit of reasonable inferences, the packaging material does count as evidence of use-in-commerce for retail services.

---

[16]Again, First Pack's reliance on the PTO examiner's rejection of the packaging material as a valid specimen is unsubstantiated. To start, First Pack offers no explanation as to how the PTO examiner's rejection would be admissible evidence. *See supra* Section III.A.iii at 21-22.

### iv. Fall/Winter 2014 Product Catalog

The last piece of evidence that Restaurantware offers for the use-in-commerce requirement is the Fall/Winter 2014 catalog. It looked like this:



This was the last specimen for use that Restaurantware submitted to the PTO. Restaurantware told the PTO that the Fall/Winter 2014 catalog was used in commerce before *February 2013* (the date of the service mark application), *see* DSOF ¶ 23; Exh. 5, Rinella Decl. ¶ 21 and Exh. 15 thereto at RGB.540, but in truth Restaurantware did not actually publish the Fall/Winter 2014 catalog until *October 2014, see* DSOF ¶ 26; Pl.'s Resp. DSOF ¶ 26; Exh. 12, Restaurantware 30(b)(6) Dep. 73:13-21; Exh. 19, Runde Dep. 57:57:11-59:18; Exh. 20, Runde Dep. Exh. 105; Exh. 21, Runde Dep. Exh. 106. Restaurantware concedes as much in its brief. Pl.'s Resp. Br. at 15-16 ("The first issue is whether Restaurantware's statement that the [the Fall/Winter 2014 catalog] was in use on February 26, 2013 … is material … The second issue is whether Restaurantware's statement in its application that [the Fall/Winter 2014 catalog] … was in commerce on February 26, 2013, shows a

deliberate attempt to mislead the USPTO … ."). So the catalog cannot even be considered as an attempt to use the service mark in commerce before February 2013.[17]

So, based on the above and drawing all inferences in favor of Restaurantware, three of Restaurantware's pre-February 2013 "Fashion for Food" uses—the 8.5 x 11 inch sign, the business card, and the packaging material—satisfy the Lanham Act's use-in-commerce requirement for service marks as to Restaurantware's retail services. These uses arguably (enough for a jury to so find) draw a "direct association" between "Fashion for Food" and Restaurantware's retail services. They do not, however, evidence use of "Fashion for Food" as a source identifier for Restaurantware's marketing services to manufacturers.[18]

### b. Continuous Effort to Use the Mark

The next issue is whether Restaurantware made "a *continuous* effort … to use the mark" before February 2013. *Avakoff*, 765 F.2d at 1098 (emphasis added). As discussed earlier, the only uses-in-commerce that count toward satisfying this requirement are the 8.5 x 11 inch sign, the business card, and the packaging material. Drawing *all* reasonable inferences in favor of Restaurantware, there is

---

[17]Restaurantware also placed its "Fashion for Food" tagline on its Spring/Summer 2013 catalog. Exh. 5, Rinella Decl. ¶ 12 and Exh. 9 thereto. There is no evidence, however, that this catalog pre-dates February 26, 2013, the date that Restaurantware filed its service mark application. *See* DSOF ¶ 26; Pl.'s Resp. DSOF ¶ 26.

[18]The Trademark Trial and Appeal Board has held that "in the absence of a fraud claim, an applicant who bases its application on Section 1(a) (use in commerce) but who did not use the mark on some or all of the goods or services identified in the application may 'cure' this problem by amending its basis to Section 1(b) (intent to use)." *Grand Canyon West Ranch LLC v. Hualapai Tribe*, 78 U.S.P.Q.2d 1696, 2006 WL 802407, at *2 (T.T.A.B. Mar. 17, 2006).

just enough to establish that Restaurantware continuously used "Fashion for Food" in commerce before filing its service mark application.

Courts look at the totality of circumstances when analyzing the "continuous effort" requirement. *See, e.g., Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001); *cf. Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999) (observing, in the common law context, that "[t]he determination of whether a party has established protectable rights in a trademark is made on a case by case basis, considering the totality of the circumstances"). In *Chance v. Pac-Tel Teletrac, Inc.*, the Ninth Circuit identified examples of facts that could show "continuous effort" aside from sales themselves:

> the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, the amount of business transacted … .

242 F.3d at 1159.

Turning to the facts here, the Court concludes that Restaurantware has raised a genuine factual issue on the "continuous effort" requirement. Restaurantware's first bona fide use of "Fashion for Food" was in August 2011, when the phrase appeared on the 8.5 x 11 trade show sign. PSOF ¶ 4; Def.'s Resp. PSOF ¶ 4; Exh. 5, Rinella Decl. ¶ 7 and Exh. 4 thereto; R. 182-3, Exh. 38, Restaurantware 30(b)(6) Dep. 12:4-10. Later, in April 2012, Restaurantware placed the tagline on 250 to 500 business cards. Exh. 12, Restaurantware 30(b)(6) Dep. 53:16–24, 54:14-23; Exh. 5, Rinella Decl. ¶ 9. Richard Rinella, Restaurantware's co-

founder, claimed that he gave business cards "to potential customers in order to help them find and use our website," and used the cards "[a]t the January 2013 Fancy Food trade show … ." R. 182-1, Exh. 36, Rinella Aff. ¶¶ 8-9.[19] And, according to Restaurantware's service mark application, the company also used the "Fashion for Food" packaging tape in commerce before February 2013. *See* Exh. 5, Rinella Decl. ¶ 19 and Exh. 13 at RGB.557. When viewed in the light most favorable to Restaurantware, this string of "Fashion for Food" uses between August 2011 and February 2013 is enough to meet the "continuous effort" requirement.[20] Undoubtedly, this is a very close call; and Restaurantware will not have the benefit of the summary-judgment standard at trial. But at this stage, Restaurantware has submitted sufficient evidence to create questions of fact for the fact finder. Therefore, the Court denies both parties' motions for summary judgment on the issue of commercial use under the Lanham Act.

## 2. Fraud on the USPTO

---

[19]Rinella's affidavit leaves a lot to be desired. First, the affidavit does not try to even estimate how many potential customers Restaurantware reached via its business cards. It is also unclear whether Restaurantware continually used the business cards between April 2012 (when Rinella ordered the cards) and the January 2013 trade show. But because the summary-judgment standard is on Restaurantware's side, the Court will reasonably infer that Restaurantware's founders continuously handed out their business cards during this timeframe.

[20]That Restaurantware actually provided—as opposed to merely prepared to offer— its retail services during this timeframe further evidences that Restaurantware continuously used its mark in commerce prior to registration. *See Couture v. Playdom, Inc.*, 778 F.3d 1379, 1381 (Fed. Cir.) (holding that "the offering of a service, without the actual provision of a service, is [in]sufficient to constitute use in commerce under Lanham Act § 45, 15 U.S.C. § 1127."), *cert. denied*, 136 S. Ct. 88 (2015); *see also Chance*, 242 F.3d at 1159 (observing that district courts should consider the genuineness and commercial character of the activity … [and] the amount of business transacted" to determine whether a mark has been used in commerce).

The parties also move for summary judgment on First Pack's counterclaim, in which First Pack alleges that Restaurantware obtained the service mark by fraud. A service mark must be cancelled if it is fraudulently obtained. 15 U.S.C. § 1064(3). The party seeking cancellation "bears a heavy burden" of establishing that the applicant "knowingly [made] false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quotation and citation omitted) (fraud must be shown by clear and convincing evidence); *Miyano Mach. SA, Inc.*, 576 F. Supp. 2d at 879-80 (N.D. Ill. 2008) (same); *see also Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982) ("Fraud will be deemed to exist only when there is a *deliberate attempt to mislead* the Patent Office into registering the mark." (emphasis added)). Under that heavy burden, a mark warrants cancellation for fraud only where the applicant made a material misrepresentation with fraudulent intent. *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986); *Am. Eagle Outfitters, Inc.*, 2013 WL 6839815, at *14.

It is the intent requirement that prevents summary judgment in First Pack's favor on the fraud claim. To be sure, Restaurantware did make misrepresentations, and they were material (in the sense that they naturally would influence the PTO examiner). *See supra* Section III.A.1. The Fall/Winter 2014 specimen, which was the only one accepted by the PTO, was most certainly *not* in use as of the February 2013 service mark application date.

But a reasonable jury could find that there was no fraudulent intent. Restaurantware asserts that it did not act with fraudulent intent because "large aspects of the application were completely directed by the attorney, and the catalog plainly says 'Fall/Winter 2014'" Pl.'s Resp. Br. at 16 (internal quotation and citation omitted); DSOF ¶ 24; Exh. 12, Restaurantware 30(b)(6) Dep. 69:22-24. Courts often hold that an applicant's reliance on advice of counsel helps disprove fraudulent intent. *See, e.g.*, *Slep-Tone Entm't Corp. v. Coyne*, 2015 WL 5821695, at *8 (N.D. Ill. Sept. 30, 2015) (concluding that because plaintiff relied on counsel to file its service mark application, defendant "d[id] not come close to indisputably demonstrating, for summary judgment purposes, that [plaintiff] filed the applications with fraudulent intent"); *M.C.I. Foods, Inc.*, 96 U.S.P.Q.2d 1544, 2010 WL 3798506, at *6 (T.T.A.B. Sept. 13, 2010) (holding that "[u]nder the circumstances of this case, finding particularly that MCI sought advice of counsel, we cannot conclude that MCI intended to deceive the USPTO"); *cf. Alcatraz Media, Inc. v. Chesapeake Marine Tours Inc. DBA Watermark Cruises*, 107 U.S.P.Q.2d 1750, 2013 WL 5407315, at *22-24 (T.T.A.B. July 2, 2013) (applicant's false declaration that its mark acquired distinctiveness did not amount to fraud because applicant relied on advice of counsel and conducted due diligence). That Restaurantware submitted a catalog conspicuously marked "Fall/Winter 2014" also refutes the idea that Restaurantware tried to slip a fast one past the PTO. Although "mere assertion that one acted on 'advice of counsel' [does not] make out a good defense to a charge of fraud," it is enough here—when combined with the obvious nature of the 2014 versus 2013

problem—for Restaurantware to survive summary judgment on the fraud basis for the counterclaim. *M.C.I. Foods, Inc.*, 96 U.S.P.Q.2d 1544, 2010 WL 3798506, at *6. But the flip side on *Restaurantware*'s summary-judgment motion is likewise true; that is, if the evidence is viewed in the light most favorable to *First Pack*, then a reasonable jury could find that Restaurantware committed fraud by presenting the catalog specimen to the PTO.

In sum, because a reasonable factfinder could find that Restaurantware continually used "Fashion for Food" in commerce and did not intend to deceive the PTO, First Pack loses summary judgment on its cancellation counterclaim. Restaurantware's corresponding cross-motion against the cancellation counterclaim is also denied.

### B. Infringement Claims: Prior Use

In another avenue of attack, First Pack argues that it is entitled to summary judgment against the infringement claim because First Pack used its "Everyday Fashion for Food" tagline before Restaurantware used "Fashion for Food." First Pack's purported prior use is important because ownership rights in a trademark "are determined by the date of the mark's first use in commerce." *See Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015). "The party who first uses a mark in commerce is said to have priority over other users." *Id.* Registration, however, provides prima facie evidence of the registrant's ownership and exclusive right to the mark. 15 U.S.C. § 1057(b). But even "a holder of a federally registered trademark [is] subject to any superior common law rights acquired by another party

… ." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001); *see also* 15 U.S.C. § 1115(b)(5) (junior user has common law trademark rights in the territory in which it was a prior user up to the senior user's application filing date); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 435 (7th Cir. 1999) ("[A] trademark application is always subject to previously established common law trademark rights of another party."); 2 McCarthy on Trademarks and Unfair Competition § 16:18.50 (4th ed.) ("The nonregistered rights of a senior user continue and are not erased by the later federal registration of a junior user.").

To determine priority, it is necessary to compare when Restaurantware and First Pack first used their respective taglines in commerce. The earliest possible date that Restaurantware used "Fashion for Food" as a service mark in commerce was in August 2011, at the European Imports trade show. First Pack disputes that the trade-show sign really was a use-in-commerce, but as explained above, *see supra* Section III.A.1.a.ii, a reasonable jury could find that the sign qualifies as a use-in-commerce. So August 2011 is the earliest date of use for Restaurantware. In comparison, the best that First Pack can do is sometime in 2012: First Pack used "Everyday Fashion for Food Packaging" during a trade show that ran from February 26 to 29 of that year, as well as on the cover of its 2012 product catalog, its corporate letterhead, and its website (for the website, it was June 2012). DSOF ¶¶ 7-9; Pl.'s Resp. DSOF ¶ 8, 9; Exh. 3, Merran Decl. ¶¶ 3, 5-7 and Exh. C thereto. The cover of the 2012 catalog contained the tagline, the First Pack brand name and

logo, and a picture of petite food skewers, Exh. 3, Merran Decl. ¶ 6 and Exh. C thereto, but there is no reason to believe that the catalog was distributed before the August 2011 trade show. The prior-use element will be for the jury to decide.[21]

## C. Infringement Claims: Likelihood of Confusion

Next, First Pack argues that no reasonable jury could find that Restaurantware has proved likelihood of confusion among its customers and potential customers. Generally speaking, on this very fact-bound inquiry, "a motion for summary judgment in trademark infringement cases must be approached with great caution." *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993). Summary judgment as to the likelihood-of-confusion question is only appropriate then where "the evidence is so one-sided that there can be no doubt about how the question should be answered." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) (internal quotations and citations omitted). Courts have long relied on seven relevant factors when determining whether consumers are likely to be confused:

> (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another.

---

[21]It is worth noting that if the jury finds that the August 2011 trade show does not qualify as a use-in-commerce, then the jury will need to decide, based on the other purported uses-in-commerce, whether First Pack has "prior and continuous rights in a market that [would] preempt[] [Restaurantware's] constructive nationwide rights." *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, 2004 WL 2967446, at *10 (N.D. Ill. Nov. 15, 2004) (rejecting Defendant's prior user defense given that Defendant failed to prove, among other things, "whether it has continuously used its marks in … markets from a date prior to [Plaintiff's] constructive nationwide use on May 22, 2002").

*Id.* at 929 (citation omitted). "No single factor is dispositive." *Id.* But three factors—similarity of the marks, the defendant's intent, and actual confusion—are "particularly important." *Id.*

When the evidence is viewed in Restaurantware's favor, there is enough for a reasonable jury to find likelihood of confusion. First and foremost, the marks are basically the same: "Fashion for Food" versus "Everyday Fashion for Food." The one additional word—"everyday"—is not much of a distinction (at least a jury could reasonably so find). The type of products targeted by the parties also overlaps (tableware), as do the markets. And the relatively low price of the goods also dampens the prospect that customers exercise great care in discerning a difference between such precisely similar marks. It is true that there is no record evidence—and Restaurantware does not even contend—that First Pack intended to "palm off" their tableware products as Restaurantware's. And the evidence of actual confusion offered by Restaurantware is not clearly admissible because of its lack of specificity and its relatively sporadic occurrence. But even without that evidence, a jury question remains on likelihood of confusion.

## D. Affirmative Defense: Laches

Finally, First Pack argues that the affirmative defense of laches applies to Restaurantware's claims. Def.'s Br. at 27-28. To establish a laches defense, First Pack must show that (1) Restaurantware had knowledge of First Pack's use of an allegedly infringing mark; (2) Restaurantware inexcusably delayed in taking action with respect to First Pack's use; and (3) Restaurantware's delay prejudiced First

Pack. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792-93 (7th Cir. 2002). But here again, First Pack has an uphill battle because "[l]aches is generally a factual question not subject to summary judgment." *Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 679 (7th Cir. 1985). To make its case, First Pack argues that laches applies because (1) Restaurantware knew of First Pack's allegedly infringing mark as of May 2012; (2) Restaurantware waited 30 months to file suit; and (3) Restaurantware's delay prejudiced First Pack. Def.'s Br. at 27-28. First Pack claims that Restaurantware's delay made fact-gathering difficult and led First Pack to make "significant expenditures that could have been avoided with prompt action." *Id.* None of these arguments, however, warrant summary judgment.

First, there is a triable issue of fact as to when Restaurantware first learned of First Pack's tagline. First Pack says Restaurantware was on notice as of May 2012, when First Pack sent Restaurantware a letter with "Everyday Fashion for Food" in the letterhead. PSOF ¶ 27; Pl.'s Resp. DSOF ¶ 13; Def.'s Resp. PSOF ¶ 34. But Restaurantware's co-founder testified that she did not notice the tagline in First Pack's letterhead until asked about it *after* Restaurantware had filed suit. PSOF ¶ 26; Exh. 39, Bouchareb Dep. 181:12-16. For its part, Restaurantware asserts that it first learned of First Pack's tagline in Fall 2014, when its founders' parents received a First Pack catalog bearing the tagline. PSOF ¶ 34; Exh. 38, Restaurantware 30(b)(6) Dep. 80:20-81:14; Exh. 10 Restaurantware's Objections and Responses to First Pack's First Set of Interrogs. ¶ 10. That competing evidence sets up a genuine factual dispute on the timing of notice.

Indeed, even if Restaurantware was on notice as of May 2012, and thus waited 30 months to file suit, a reasonable jury could find that waiting that time period does not constitute "inexcusabl[e] delay[]." *Chattanoga Mfg., Inc.*, 301 F.3d at 792. The Lanham Act does not have a statute of limitations. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999). Federal courts in Illinois borrow from the statute of limitations that applies to the Illinois Consumer Fraud and Deceptive Business Practices Act, which has a three-year statute of limitations. 815 ILCS 505/10a(e); *see, e.g.*, *Kitchen Connection, Inc. v. The Pampered Chef, Ltd.*, 1999 WL 1101231, at *5 n.3 (N.D. Ill. Dec. 1, 1999) ("In the absence of any argument on the issue, this court concurs with its colleagues who have compared the causes of action provided for in § 43 of the Lanham Act with those provided in § 2 of the Illinois Consumer Fraud Act, and held that the three year limitations period applies to the federal claim."); *cf. Chattanoga Mfg., Inc.*, 301 F.3d at 793-94 (applying three-year limitations period to determine whether a presumption of laches exists). Filing with six months to go on the statute of limitations does not, without anything more, constitute inexcusable delay. To be sure, filing a suit within a statute of limitations period "is not the sole indicator of whether laches may be applied in [this] particular case." *Hot Wax*, 191 F.3d at 822. But a reasonable jury could find that beating the limitations period by six months does not equate to inexcusable delay.

Finally, the record evidence does not establish that Restaurantware's delay prejudiced First Pack. A reasonable jury could reject First Pack's non-specific assertions, *see* DSOF ¶ 37; Exh. 3, Merran Dec. ¶ 18, that the delay in filing suit

truly prevented fact-gathering, or truly made fact-gathering more difficult or more expensive. To be sure, discovery in this case did not go smoothly, but viewing the evidence in Restaurantware's favor, a jury need not find that the problems were due to the delay in filing suit (even if the May 2012 notice-date applies). The laches affirmative defense does not justify summary judgment.

## IV. Conclusion

For the reasons stated above, (1) First Pack's motion for summary judgment, R. 146, is denied, except on the limited ground that Restaurantware's service mark cannot apply to *marketing* services; and (2) Restaurantware's cross-motion against the cancellation counterclaim, R. 179, is denied.

At the next status hearing, the parties must be ready to discuss the next step of the litigation, whether it be a trial schedule or a settlement conference. The parties must confer over the next step by May 23, 2016. If the parties want a settlement referral to the magistrate judge, then they may call the courtroom deputy in advance of the status hearing to jointly ask for the referral. The Court does encourage the parties to actively pursue settlement negotiations, because the pretrial preparation and trial of this case clearly will require enormous expenditures of time and money.

ENTERED:


    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 4, 2016